E. C. McCARTY v. HARTFORD FIRE INSURANCE COMPANY.

Decided June 20, 1903.

**1.—Fire Insurance—Ownership—Negligence of Agent.**

Evidence in an action on a fire policy held to sustain a finding that the insured property did not belong to plaintiff at the time it was insured, but to a woman with whom he was living in adultery, and that the insurance agent was not guilty of negligence in assuming that the parties were husband and wife and the woman the owner of the property, as they represented the facts to be.

**2.—Same—Pleadings—Verification—Identity of Insured.**

Where the defendant pleaded that the plaintiff was not the person insured, but did not deny the execution of the policy, this was not a plea of non est factum, and did not require to be verified by affidavit.

**3.—Same—Impeaching Witness.**

The woman, who had procured the insurance of the property as her own and used the man's name as her own, being on the stand as a witness for him (plaintiff), it was competent for defendant to inquire as to her relation with the plaintiff, both to impeach her credibility and to establish facts material to the defense.

**4.—Same—Evidence—Statements of Agent.**

It was competent to prove the statements of the woman as to the ownership of the property, etc., made in procuring the insurance. Even if the property was not hers, she was shown to have been plaintiff's agent in procuring the insurance.

**5.—Same—Conspiracy—Declarations.**

Held also, that the evidence, which is set forth, and which tended to show a conspiracy between the woman and plaintiff to procure the insurance and burn the property, warranted proof of the statements of the woman as being those of a coconspirator.

**6.—Same—Impeachment—Contradiction.**

. · The woman having testified that plaintiff was the exclusive owner of the property, it was competent to impeach her by showing that shortly after the fire she told a third person that if the company would not prosecute her for arson, she would give up the policy, and that plaintiff had nothing to do with it, as everything belonged to her.

Appeal from the District Court of Johnson. . Tried below before Hon. W. Poindexter.

*Brown & Bledsoe,* for appellant.

*Crane, Greer & Wharton,* for appellee. ·

TEMPLETON, ASSOCIATE JUSTICE.—On May 14, 1901, the Hartford Fire Insurance Company issued a policy of insurance in the sum of $1500, whereby it insured E. C. McCarty, for the term of one year, against loss or damage by fire to a lot of household furniture and medical instruments situated in a dwelling house in Cleburne, Texas. On May 21, 1901, the insured property was destroyed by fire. A man who claimed that his name was E. C. McCarty, that the policy was issued to him, and that he was the owner of the insured property, made

out and presented proofs of loss. Payment was refused by the company, and the said claimant thereupon brought this suit to recover the sum for which the policy was issued. In addition to the general issue, the defendant pleaded (1) that the insured property did not belong to the plaintiff, but was the property of a woman named Ellen C. Battles, who falsely claimed that her name was Ellen C. McCarty and that she was the wife of the plaintiff; (2) that the policy was not issued to the plaintiff, but was issued to the said woman under her alleged name; (3) that the plaintiff's name was not E. C. McCarty, but was A. C. McCarty; that at the time the policy was issued, the plaintiff and the said woman were not husband and wife, as they claimed to be, but were living together in adultery, and that in order to effect the said insurance the plaintiff and the said woman fraudulently concealed from the company their true names and relationship and thereby induced the company to issue the policy, which it otherwise would not have done; (4) that the plaintiff falsely and knowingly represented and stated in the proofs of loss that the insured property belonged to him, when it in fact belonged to the said woman; and (5) that the plaintiff and the said woman willfully burned the insured property, or caused it to be burned. It was also alleged that the policy contained the usual stipulations respecting the ownership of the insured property, the fraudulent concealment of facts material to the risk, and the willful making of false representations relating to the subject of insurance. The cause was tried before the court without a jury, and judgment was rendered for the defendant.

In 1898 one Charles Battles, together with his wife and their little daughter, resided at Jerseyville, Ill. The wife's name was Ellen C. Battles. She was 35 or 40 years old, and conducted a sort of hospital. A man named Alonzo C. McCarty, or Elonzo C. McCarty, came to her hospital for treatment. He was about 21 years old; his education was very limited, and he had little means. He was a day laborer by occupation. About this time Battles and his wife separated. He returned to Missouri, whence he came, and she and their daughter remained at Jerseyville. After McCarty recovered he became an assistant about the hospital. A year or two thereafter the parties left Jerseyville and appear to have gone to St. Louis. They remained there several months, when McCarty came to Texas. He was followed in a few weeks by Mrs. Battles and her daughter. McCarty met them at Dallas and they all went to Cleburne, reaching there early in 1901. They boarded together a short time at a hotel and then at a boarding house. Finally, about the middle of February, Mrs. Battles rented a dwelling house and they moved into it. They had an X-ray machine, a few medical instruments and books, some household and kitchen furniture, wearing apparel, etc. The man and the woman held themselves out as husband and wife. They had never been married. Battles was still living, and had not been divorced from his wife. McCarty appears to have worked in the railroad shops. Mrs. Battles professed to be a physician and

surgeon; and to treat diseases of women. She had cards printed which gave her name as Ella McCarty and which stated her business. Her name was given in the sign on her door as Dr. E. C. McCarty. Shortly before the policy was issued she applied to the agent of appellee for insurance on the property covered by the policy. In her conversation with the agent she spoke of the property as being her own. The agent offered to go at once and inspect the property, but she told him it was not ready just then for inspection. She returned home and a day or two later sent her little daughter to the agent with a note requesting the agent to come and make the inspection. Another agent of the company was sent out for that purpose. He was met by McCarty, who, on being informed of the agent's business, told him that the doctor would be in directly. Mrs. Battles soon came in and showed the agent what property she wanted insured. McCarty was present and showed how the X-ray machine was operated. The agent returned to the office, and two or three days thereafter the premium was paid and the policy was issued and delivered. A week later the property was burned. The fire occurred between 4 and 5 o'clock in the morning. McCarty and Mrs. Battles were alone in the house that night, the little daughter of the latter having gone to spend the night at a neighbor's. McCarty and Mrs. Battles were fully dressed when they were observed shortly after the fire was discovered. The woman even had on her corset. With regard to the ownership of the property, both of them testified that it belonged exclusively to McCarty. He testified that when he left Illinois his father gave him $1500; that he got to Texas with about $1400; that he bought the X-ray machine and paid therefor the sum of $1000 in cash; that he bought the other property and paid therefor the sum of $800 in cash. His father testified by deposition in his behalf that his son had some money when he left Illinois, but denied having given him any considerable amount. McCarty was never licensed to practice medicine, and did not treat any patients while at Cleburne. He stated that he bought the machine and the medical instruments and books after he reached Texas in the expectation of establishing a hospital at Cleburne. He had never been at Cleburne at that time. He and his father testified that his name was Elonzo C. McCarty. Several persons testified by deposition for the defendant that they had known him many years, and that he always went by the name of Alonzo C. McCarty. The agents of the company at Cleburne knew nothing of the facts at the time the policy was issued, except what appeared on the surface. They supposed that the parties were husband and wife and that the property belonged to the woman. Had they known the facts, they would not have issued the policy. In October, 1901, McCarty and Mrs. Battles were married, Battles having theretofore obtained a divorce.

Conclusions of fact and law were not requested or filed, but it appears from an explanation to a bill of exceptions that the trial judge found "that the property was in fact owned by Mrs. Battles at the

time the policy was issued, and that the plaintiff had no interest in it, and that the agents thought the policy was issued to the woman, and that she was the E. C. McCarty, and that the policy would not have been issued had it been known that the man was E. C. McCarty and the name of the woman Ellen C. Battles." There can be no doubt, as a matter of law, that the plaintiff was not entitled to recover if, as a matter of fact, the insured property belonged to Mrs. Battles. The trial judge having so found, and the evidence being sufficient, in our opinion, to justify the finding, the other issues in the case are not material. We will say, however, that we think the evidence was sufficient to warrant the other findings of the trial judge. Appellant insists that, notwithstanding the said findings, the defendant was not entitled to judgment on the issue of mistake in the identity of the assured. It is true, as contended by appellant, that if the property belonged to McCarty and the policy was taken out for his benefit, the supposition of the agents of the company that the property belonged to the woman and that the policy was being issued to her, would not prevent a recovery by the plaintiff, provided the mistake was due to the negligence of the company, and not to any fraud practiced by the assured. We think the evidence shows that it is not a case of negligence on the part of the company. Its agents assumed that the parties were what they held themselves out to be, and it can not be held that they were guilty of negligence in doing so. The woman procured the insurance and represented herself as the owner of the property. The agents of the company were therefore justified in supposing that they were issuing a policy to the woman on her property. The suppositions were induced by the misconduct and misrepresentations of McCarty and Mrs. Battles, who were evidently acting together in the accomplishment of a common purpose in all that was done. The facts not known to the company were material to the risk, and we think the defendant was entitled to judgment on the issue of mistake and fraud in procuring the insurance. Appellant further insists that the company can not avail itself of the defense of mistake in the identity of the assured because it did not plead non est factum under oath. The plaintiff sued on a policy issued by the defendant to E. C. McCarty. The defendant admitted the issuance of the policy as alleged, but denied that the plaintiff was E. C. McCarty, or, if he was, that he was the E. C. McCarty to whom the policy was issued. It was not necessary for this plea to be verified. The instrument sued on was not disputed, but was admitted. The facts put in issue by the plea were outside the instrument. Such plea does not come within the statute requiring the verification of certain pleadings.

Mrs. McCarty was used as a witness by the plaintiff, and the defendant was permitted, over objections urged by the plaintiff, to question her concerning her relations with the plaintiff and her reasons for going under an assumed name. The objections were properly overruled. The cross-examination of Mrs. McCarty tended to impeach her

credibility as a witness. · The facts sought to be elicited tended to establish the defense of the company that facts material to the risk were fraudulently concealed by the assured. For the reasons stated the trial court did not err in permitting the defendant to question the plaintiff himself on the same subjects.

· The plaintiff objected to the agent of the company, who was first approached by Mrs. Battles, being permitted to testify as to statements made to him by her relating to the insurance. There can be no doubt as to the admissibility of this evidence. Even according to the plaintiff's theory of the case, she was his agent to procure the insurance, and, as the statements were made in the course of the transaction in which he had engaged her, he can not complain of the statements being used against him. According to the defendant's theory, McCarty and Mrs. Battles were acting together in procuring the insurance, their purpose being to fire the property, collect the insurance, and appropriate the same to their common use. We think the evidence makes such a prima facie case of conspiracy between them as to render the acts and declarations of either relating to the purpose of the conspiracy and occurring during the pendency thereof admissible against the other.

· Mrs. McCarty testified, at the instance of the plaintiff, that he was the exclusive owner of the insured property, and that she had no interest in it. She was asked on cross-examination if she did not state to one McClain, shortly after the fire, that if the company would not prosecute her for arson she would give up the policy, and that McCarty had nothing to do with it, and that everything belonged to her. She denied having made such statement, and was contradicted by McClain. The plaintiff complains of the action of the court in permitting the defendant to go into an investigation of the matters aforesaid, proper bills of exception being reserved. The evdence tended strongly to impeach the credibility of the plaintiff's witness, Mrs. McCarty, and was therefore admissible. And we are not sure that the evidence was not admissible on another theory. It appears that McCarty and Mrs. Battles were being jointly prosecuted for adultery and arson. It seems that from first to last they have acted in perfect concert in regard to all matters relating to the said prosecutions and the said insurance, the woman being the manager for both parties. If there was a conspiracy between them to swindle the insurance company, it was not completed when the policy was issued, or when the property was destroyed. If such conspiracy existed, it continued while the policy remained outstanding and uncollected. The evidence complained of was certainly admissible for impeachment purposes, and we are not prepared to say that it was not admissible as original evidence. What is said above is sufficient to dispose of the plaintiff's objections to the testimony of the defendants' witness Yoakum concerning statements made to him by Mrs. Battles.

The defendant was permitted, over objections urged by the plaintiff, to prove that under the rules of the insurance company policies were

not written on property of persons living in adultery. We are inclined to the opinion that the evidence was admissible, but, as appears from 'an explanation to the bill of exception that the evidence was not considered by the court, it is unnecessary to decide the question.

On the whole case we are satisfied that the trial court entered the only proper judgment that could have been rendered, and the said judgment will therefore be affirmed.

*Affirmed.*